## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA CARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY NATIONAL BANK AND TRUST COMPANY OF LAWTON, OKLAHOMA, and DOES 1 through 5,<br><br><br>Defendants. | Case No. CIV-21-29-PRW |

## PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

i

Pursuant to Federal Rule of Civil Procedure Rule 23(e), Plaintiff Lisa Carter moves this Court to grant final approval of the Parties' agreement to settle the claims Plaintiff made in the Complaint, including those claims for which Plaintiff sought class action relief. Plaintiff seeks the Court's final approval of the settlement on the basis that the class representative and Class Counsel have adequately represented the Class, the Settlement Agreement was negotiated at arm's length, the relief provide for the Class is adequate, the proposal treats Class Members equitably relative to each other, and Class Members have reacted favorably to the settlement following notice.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order: (a) certifying the Settlement Classes proposed in Plaintiff's motion; (b) giving final approval to the terms of settlement proposed by the parties; (c) appointing Richard D. McCune and Emily J. Kirk of McCune Law Group, and Barrett T. Bowers of The Bowers Law Firm, as Class Counsel; (d) appointing Simpluris as the Settlement Administrator; (e) appointing Named Plaintiff Lisa Carter as the representative of the Settlement Classes; (f) awarding attorney's fees, costs, and a service award to the class representative; and (g) setting the date for the final fairness hearing.

Plaintiff bases this Motion on the Notice, attached memorandum of points and authorities, the declaration of Plaintiff's counsel Richard D. McCune, the declaration of Plaintiff's counsel Barrett T. Bowers, the declaration of Plaintiff's expert Arthur Olsen, the declaration of Jacob J. Kamenir on behalf of the Settlement Administrator Simpluris, all exhibits thereto, all matters of which this Court may take judicial notice, all pleadings in this matter, and such evidence and argument as may be presented at the hearing.

Dated: November 6, 2023   Respectfully submitted,

          */s/Emily J. Kirk*
          Emily J. Kirk, *Pro Hac Vice*
          ejk@mccunewright.com
          **McCune Law Group, APC**
          231 N. Main Street, Suite 20
          Edwardsville, Illinois 62025
          Telephone: (618) 307-6116
          Facsimile: (618) 307-6161

          Richard D. McCune, *Pro Hac Vice*
          rdm@mccunewright.com
          David C. Wright, *Pro Hac Vice*
          dcw@mccunewright.com
          **McCune Law Group, APC**
          3281 E. Guasti Road, Suite 100
          Ontario, California 91761
          Telephone: (909) 557-1250
          Facsimile: (909) 557-1275

          Barret T. Bowers, OBA No. 30493
          barret@bowerslawok.com
          **The Bowers Law Firm**
          P.O. Box 891628
          Oklahoma, City, Oklahoma 73189
          Telephone: (405) 727-7188

          Attorneys for Plaintiff Lisa Carter
          and the Putative Class

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA CARTER, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>THE CITY NATIONAL BANK AND TRUST COMPANY OF LAWTON, OKLAHOMA, and DOES 1 through 5,<br><br>   Defendants. | Case No. CIV-21-29-PRW |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page

I.   SUMMARY ................................................................................................ 1

II.   ANALYSIS OF THE DATA ..................................................................... 3

III.   TERMS OF THE SETTLEMENT ............................................................ 6

  A.   Class Definition ..................................................................................... 6

  B.   Payment to Claimants............................................................................ 7

  C.   Notice to Class Members ....................................................................... 8

  D.   *Cy Pres* Distribution............................................................................. 9

  E.   Service Award ...................................................................................... 10

  F.   Costs ..................................................................................................... 10

  G.   Attorney's Fees.................................................................................... 11

     1.   Attorney's Fees are Reasonable Based on the "Johnson" Factors .................. 13

IV.   ARGUMENT ........................................................................................... 18

  A.The Settlement Meets the Standard for Final Approval Because it is Fair, Reasonable and Adequate.......................................................................................... 18

     1.   The Settlement was Fairly and Honestly Negotiated ...................................... 18

     2.   Serious Questions of Law and Fact Exist........................................................ 19

     3.   The Value of the Immediate Recovery Outweighs the Mere Possibility of Future Relief ................................................................................................... 20

     4.   The Judgment of the Parties ........................................................................... 21

  B.   The Proposed Settlement Classes Should be Certified ......................... 21

     1.   The Numerosity Requirement is Satisfied....................................................... 21

     2.   The Requirement of Commonality is Satisfied ............................................... 22

     3.   The Requirement of Typicality is Satisfied..................................................... 22

     4.   The Requirement of Adequate Representation is Satisfied.............................. 23

     5.   The Settlement Class Meets the Requirements of Rule 23(b)(3) .................... 24

V.   CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Products*, Inc. v. Windsor
  521 U.S. US 591 (1997) .................................................................................. 25

*Aragon v. Clear Water Prod. LLC*,
  2018 WL 6620724 (D. Colo. Dec. 18, 2018) ................................................ 10

*Barker v. Bayport Credit Union*,
  2020 WL 13095246 (E.D. Va. Apr. 17, 2020) .............................................. 13

*Beer v. XTO Energy, Inc.*,
  2009 WL 764500 (W.D.Okla. Mar. 20, 2009) .............................................. 22

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................... 11

*Bruner v. Sprint United Mgmt. Co.*,
  2009 WL 2058762 (D. Kan. July 14, 2009) .................................................. 11

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ........................................................................ 25

*CGC Holding Co. v. Broad & Cassel*,
  773 F.3d 1076 (10th Cir. 2014) .................................................................... 25

*Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*,
  1993 WL 355466 (W.D. Okla. June 8, 1993) .............................................. 12

*Cook v. Rockwell Int'l Corp.*,
  2017 WL 5076498 (D. Colo. Apr. 28, 2017) ................................................ 12

*Fager v. CenturyLink Commc'ns, LLC*,
  854 F.3d 1167 (10th Cir. 2016) .................................................................... 18

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ...................................................................................... 16

*Farrell v. Bank of Am. Corp., N.A.*,
  (9th Cir. 2020) 872 F.Appx. 628, 631 .......................................................... 11

*Gonzalez v. Elna Sefcovic, LLC*,
  208 L.Ed.2d 425 (2020) ................................................................................ 21

# TABLE OF AUTHORITIES (cont.)

Page(s)

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..................................................................................... 16

*Hochstadt v. Bos. Sci. Corp.*,
708 F.Supp.2d 95 (D.Mass. 2010) ................................................................ 18

*In re Motor Fuel Temperature Sales Prac. Litig.*,
292 F.R.D. 652 (D. Kan. 2013) ..................................................................... 23

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
325 F.R.D. 136 (D.S.C. 2018) ....................................................................... 16

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) ..................................................................... 24

*Johnson v. City of Tulsa*,
2003 WL 24015151 (N.D. Okla. May 12, 2003) ........................................... 21

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................................................... 13

*Lucken Fam. Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
2010 WL 5387559 (D. Colo. Dec. 22, 2010) ................................................ 15

*Malloy v. Monahan*,
73 F.3d 1012 (10th Cir.1996) ........................................................................ 15

*Marcus v. Kansas Dept. of Rev.*,
209 F.Supp.2d 1179 (D. Kan. 2002) ............................................................. 21

*McNeely v. Nat'l Mobile Health Care, LLC*,
2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...................................... 10, 20

*Millsap v. McDonnell Douglas Corp.*,
2003 WL 21277124 (N.D.Okla. May 28, 2003) ............................................ 17

*Nieberding v. Barrette Outdoor Living, Inc.*,
129 F. Supp. 3d 1236 (D. Kan. 2015) ........................................................... 16

*Poertner v. Gillette Co.*,
618 Fed. Appx. 624 (11th Cir. 2015) ............................................................ 11

# TABLE OF AUTHORITIES (cont.)

Page(s)

*Ramah Navajo Chapter v. Jewell*,
  167 F.Supp.3d 1217 (D.N.M. 2016) ................................................................. 12

*Rel. Stricklin v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ........................................................................ 23

*Seiffer v. Topsy's Int'l, Inc.*,
  70 F.R.D. 622 (D. Kan. 1976) ............................................................................ 5

*Shaw v. Interthinx, Inc.*,
  2015 WL 1867861 (D. Colo. Apr. 22, 2015) ..................................................... 5

*Smith v. Bank of Hawaii*,
  2019 WL 2712262 (D. Haw. June 28, 2019) .................................................... 16

*Trombley v. Nat'l City Bank*,
  826 F.Supp.2d 179 (D.D.C. 2011) .................................................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016). ......................................................................................... 24

*United States v. Colo.*,
  937 F.2d 505 (10th Cir.1991) ........................................................................... 19

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir. 1993) .............................................................................. 13

*Voulgaris v. Array Biopharma Inc.*,
  2021 WL 6331178 (D. Colo. Dec. 3, 2021) ..................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...................................................................................... 22

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) ......................................................................... 5

Statutes

15 U.S.C. § 1693m(a) ........................................................................................ 17
U.S. Code § 1693m(a) ......................................................................................... 4

## TABLE OF AUTHORITIES (cont.)

Page(s)

Rules

Fed. R. Civ. P. 23(a)(1) ................................................................22
Fed. R. Civ. P. 23(a)(2) ................................................................22
Fed. R. Civ. P. 23(a)(3) ................................................................22
Rule 23...................................................................................22, 26
Rule 23(b)...................................................................................24
Rule 23(b)(3) ..........................................................................24, 25

Other Authorities

7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1979, 1 (2d ed.1986 & 2001 Supp.)....................................................................19

## MEMORANDUM

### I.    SUMMARY

In this class action lawsuit, Plaintiff Lisa Carter ("Plaintiff") contends that Defendant The City National Bank and Trust Company of Lawton, Oklahoma ("Defendant" or "City National") breached its contracts with Plaintiff and other City National customers, and violated Regulation E, 12 C.F.R. §§ 1005, *et seq.*, of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), by charging unlawful non-sufficient funds ("NSF") and overdraft fees. The Court previously issued preliminary approval for the settlement and Plaintiff now seeks final approval.

Plaintiff has alleged that City National breached its standardized Consumer Account Agreement by assessing multiple NSF fees (or an NSF fee followed by an overdraft fee) on a single transaction item when the contract stated only one fee may be assessed per item.  (Dkt. No. 1, ¶ 124.) She has further alleged that City National violated Regulation E by opting customers into its overdraft program using an Opt-in Agreement that inaccurately described City National's method for calculating overdraft fees on one-time debit card and ATM transactions. (Dkt. No. 1, ¶¶ 115-121.) Further, during discovery, Plaintiff learned that City National's opt-in practices violated Regulation E in other ways. (Declaration of Richard McCune ("McCune Decl."), ¶ 12.)[1]

---

[1] Plaintiff also alleged claims for breach of the covenant of good faith and fair dealing, unjust enrichment, money had and received, and restitution. Plaintiff alleged an additional breach of contract claim but opted not to pursue it.

After hard-fought litigation,[2] the parties held a full-day mediation session with Gary S. Chilton of Holladay, Chilton & Erwin, PLLC, resulting in the proposed $1,500,000.00 cash settlement (*i.e.*, Settlement Fund), and additional changes of practice, as proposed herein. (McCune Decl., ¶ 14). They subsequently executed the Settlement Agreement ("SA"), attached as **Exhibit 1** to the McCune Declaration. (*Id.*) When finally approved, the settlement will provide restitution to Class Members and pay litigation costs, costs of notice and claims administration, a service award to Plaintiff, and attorneys' fees as awarded by the Court. The Court previously approved the Settlement and class notice program on a preliminary basis. (Dkt. No. 36, ¶¶ 2-5; 8-10.)[3]

The approved notice program has been successful. Notice was sent to 66,770 unique Class Members with a successful deliverable rate of 96.5% (Declaration of Jacob J. Kamenir on behalf of Settlement Administrator, dated November 5, 2023 ("Simpluris Decl."), ¶ 11) To date, no Class Members have objected to the settlement and only one Class Member has requested to opt-out. (*Id.*, ¶¶ 15-16.)

---

[2] For a complete description of the discovery and motion practice in this case, as well as City National's additional alleged Regulation E violations, see the Declaration of Richard D. McCune at ¶¶ 10 – 14.

[3] In the Motion for Preliminary Approval ("MPA"), Plaintiff indicated it would elicit bids from two Claims Administrators, Epiq and KCC, and would select the lowest bidder. Epiq was unable to submit a bid. Thus, Plaintiff sought a bid from Simpluris, another qualified class administration firm. Simpluris provided the lower of the two bids between it and KCC. Accordingly, Simpluris was selected by Plaintiff, in consultation with Defendant, to administer this settlement. (McCune Decl., ¶ 18).

2

The settlement is an excellent result for the Class Members, and their reactions have been favorable. Class Counsel respectfully requests that the Court grant final approval of the settlement following the final Fairness Hearing.

## II.    ANALYSIS OF THE DATA

Mr. Olsen has analyzed City National's transactional account data, including details about all overdraft and NSF fees assessed between January 14, 2016 and September 5, 2023.[4]  (Declaration of Arthur Olsen, ("Olsen Decl."), ¶ 15.) As a result, he has determined that between January 14, 2016 and September 5, 2023, 39,288 individual accounts in the "Repeat Fee Settlement Class" were assessed more than one NSF fee (or an NSF fee followed by an overdraft fee), totaling $4,258,925 in fees (*Id*., ¶ 17.)  For the "Regulation E Settlement Class," he determined that between January 14, 2020 and September 5, 2023, 39,909 accounts were assessed at least one overdraft fee on a one-time debit card or ATM transaction, totaling $32,844,375. (*Id.*, ¶ 18.)[5]

After both Mr. Olsen and City National sent their data files to Simpluris, the parties realized that the data set included business accounts which should have been excluded. Accordingly, Simpluris was instructed to exclude 1,231 records. (Simpluris Decl*.,* ¶ 6). After Simpluris did so, 66,770 eligible Class Member records remained. *Id.*

---

[4] Both class periods end on the date of preliminary approval, which was September 5, 2023.

[5] Note that since some City National accountholders are members of both classes, you cannot add the totals for the two classes together for the total.  Once accounting for the overlap, Mr. Olsen determined the total number of Class Members was 68,001 and the total amount of fees equaled $37,103,300. (Olsen Decl., ¶ 19.)

26,867 records were identified as eligible for the Repeat Fee Settlement Class only, totaling $2,394,225 in fees; 28,710 records were identified as eligible for the Regulation E Settlement Class only, totaling $15,261,300 in fees; and 11,193 records were identified as eligible for both classes, totaling $19,250,475 in fees. *Id.* Thus, the total amount of actual damages is $36,906,000.[6]

Regulation E also provides for statutory damages up to $500,000 per violation per person. *See* U.S. Code § 1693m(a). City National disputed that it was subject to any statutory damages or that Regulation E provides for additional statutory penalties based on the number of violations, but Plaintiff contended the existence of five violations of $500,000, equaling up to $2,500,000. (McCune Decl., ¶ 21).  Had the matter proceeded to trial, Plaintiff would have requested this $2,500,000 in statutory damages, in addition to the full value of damages for Regulation E and Repeat Fee transactions. (*Id.*) City National was prepared to dispute these requests. (*Id.*)

The potential result of the litigation, had it played out, is difficult to predict. But one potential outcome was that City National did not breach the Account Agreement. As for statutory damages, the Court may have found no violation at all, or it may have found statutory damages far higher than $2,500,000, depending on how it interpreted the statute. Indeed, it is not entirely certain whether class members can seek actual damages under Regulation E, or only statutory damages.[7]  Resolving this uncertainty in favor of finality

---

[6] Plaintiff uses this number for purposes of referring to "actual damages" throughout this Motion.

[7] If the Court interprets Regulation E to not permit actual damages for a certified class, and that only one $500,000 penalty applies even though there are multiple

is another reason the parties have agreed to settle. *See Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *3 (D. Colo. Apr. 22, 2015) (finding net settlement amount reasonably constituting about forty percent of the potentially recoverable damages to be reasonable in light of litigation risks); *see also Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 627 (D. Kan. 1976) (finding that "the fact that a proposed settlement of a class action may only amount to a fraction of potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate…"); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 290 (D. Colo. 1997) (same).

As part of the settlement, City National has agreed to change several overdraft and NSF practices:

- requiring signatures or recorded confirmation of Regulation E opt-ins (other than opt-ins through Defendant's Interactive Voice Response ("IVR")

- each customer opting-in via IVR, after pushing the button to opt-in, will be required to listen to a full Regulation E Opt-in disclosure recording;

- adopting procedures to verify a customer has received the Opt-in Agreement before opting in, or has been read the Opt-in agreement before opting -in

- sending confirmation letters to every opting-in customer and keep a copy of each letter in the customer's file

---

violations alleged, the class is recovering approximately 50% of total damages pursuant to this settlement. (*See* Section III.B., *infra*.)

- removing all references to "available balance" and/or "collected balance" from representations about calculating overdraft fees in its advertising and account documentation (except as otherwise required by law)

- limiting the number of overdraft and NSF fees on a single item that has already been presented and incurred a fee to two retry overdraft or NSF fees regardless of the number of times the item is resubmitted for payment; and

- making changes to the deposit agreement and fee schedule to clarify that returned items may be subject to an NSF fee and then up to two retry NSF/overdraft fees if a merchant resubmits the item for payment. (SA, ¶ 2.)

The benefits from these changes cannot be quantified at this time, but the parties agree they add significant value and are material to the settlement.

## III.    TERMS OF THE SETTLEMENT

### A. Class Definition

On September 5, 2023, the Court provisionally certified two different settlement classes (collectively referred to herein as the "Class").[8] The first is the "Repeat Fee Settlement Class" including "all customers of Defendant . . . who incurred more than one NSF fee or an NSF fee followed by an overdraft fee for the same item during the period beginning January 14, 2016 and ending on September 5, 2023." (SA, ¶ 1(v); MPA Order, ¶ 2.) The second is the "Regulation E Settlement Class" including "all customers of

---

[8] The Class only covers consumer accounts as Plaintiff's claims pertain to the Consumer Account Agreement. For both the Repeat Fee Settlement Class and Regulation E Settlement Class, "customers" means personal checking account customers. (Dkt. No. 1.)

Defendant who have or had accounts with Defendant from January 14, 2020 through September 5, 2023," and were assessed an overdraft fee on a one-time debit card or ATM transaction. (SA, ¶ 1(t); MPA Order, ¶ 2.)

### B. Payment to Claimants

Class Members holding active accounts with City National at the time of settlement distribution will receive an account credit via direct deposit, while Class Members who are no longer customers will receive a check.[9] (SA, ¶ 9.) Class Members receiving checks will have one-hundred eighty (180) days to negotiate them. (*Id.*)

Of the $1,500,000.00 Settlement Fund, $1,250,000.00 (83.33%) is allocated to the "Repeat Fee Settlement Class" and $250,000.00 (16.67%) is allocated to the Regulation E Settlement Class."[10] (SA, ¶ 9(d)(iv).) Class Members shall receive their payment on a *pro rata* basis. (*Id.*) Because of the lower amount allotted to the "Regulation E Settlement Class," Class Members with qualifying Regulation E overdraft charges were sent a claim form with their notice notifying them of the number of qualifying Regulation E fees for their account. (*Id.*) By returning the claim form, Regulation E class members were eligible for compensation for up to ten (10) such fees. (*Id.*) To the extent the 16.67% of

---

[9] Those Class Members whose accounts were closed with an uncollected negative balance from January 14, 2016 to September 5, 2023, will have their individual Settlement Payment reduced by the amount owing on the account, and will only receive a check if the closed account has a positive balance after the Settlement Payment is credited to the account. (SA, ¶ 3.) City National will report the updated account balances to Experian. (*Id.*)

[10] Given City National's willingness to make extensive Regulation E practice changes, including increasing transparency of its overdraft practices, the parties agreed to the $250,000 gross settlement amount for this class.

the Net Settlement Fund allocated for Regulation E Overdraft Charges is insufficient to pay all claims, payment shall be distributed on a *pro rata* basis pursuant to a formula in the Settlement Agreement. (*Id.*) If the total Regulation E Overdraft Charges claimed is less than the net amount allocated, the excess shall be paid to all Regulation E class members, not just those making a claim. (*Id.*) As of November 2, 2023, Simpluris has received 5,445 Regulation E Settlement Class Claim Forms via the settlement website and 1,266 Regulation E Settlement Class Claim Forms by mail. (Simpluris Decl., ¶ 14.)[11]

For the "Repeat Fee Settlement Class," no affirmative claim is necessary. Class Members will receive their payment from the allocated net Settlement Fund on a *pro rata* basis as described in the Settlement Agreement. (SA, ¶ 9(d)(iv).)

### C. Notice to Class Members

Simpluris has successfully implemented the intended plan for noticing Class Members. Working with Plaintiff's expert and City National, Simpluris identified 66,770 unique accounts for distribution of notice. As of November 2, 2023, Notice was sent to 66,770 unique Class Members with a successful deliverable rate of 96.5%. (Simpluris Decl., ¶ 11.)[12] True and correct copies of the Notices mailed and emailed to Class Members are attached as **Exhibit A** to the Simpluris Declaration.

On September 25, 2023, Simpluris established a toll-free telephone line (833-200-8005) for Class Members to listen to frequently asked questions. Simpluris also established

---

[11] The deadline to submit claims is November 23, 2023. (Simpluris Decl., Ex. A).
[12] For a complete description of the success of the Notice program, as well as the reasonable efforts that were made to update mail and email addresses returned as undeliverable, *see* the Declaration of Simpluris, filed concurrently herewith, at ¶¶ 7-16.

a settlement website at www.CNBOverdraftSettlement.com, containing frequently asked questions, information for contacting the Claims Administrator, and downloadable versions of the settlement documents, the Notice, and the Claim Form. (Simpluris Decl., ¶ 13.) Simpluris has received no objections and only one request to opt-out. (*Id.*, ¶¶ 15-16.)[13]

### D. *Cy Pres* Distribution

No settlement money will revert to City National, other than to repay debt owed by Class Members. (SA, ¶ 9(d)(v).) If any residue remains in the Net Settlement Fund after all payments are made pursuant to Settlement Agreement, subject to Court approval, the parties have agreed such funds will be allocated to the Lawton Public School Foundation as the *cy pres* recipient. (McCune Decl., ¶ 45.) Oklahoma requires financial literacy as a requirement for graduation, and such funds will be spent on or earmarked for Lawton Public Schools financial literacy grants or programs in coordination with state requirements. (*Id.*) A true and correct copy of the letter confirming the allocation of the *cy pres* funds from Lisa Carson, Executive Director of Lawton Public School Foundation, is attached to the McCune Declaration as **Exhibit 4.**

---

[13] On October 5, 2023, Class Counsel learned that a staff member responding to Class Member inquiries mistakenly told some callers that they did not have to do anything to receive payment. (McCune Decl., ¶ 19). This was inaccurate given "Regulation E Settlement Class" members must submit a claim in order to maximize their recovery. (*Id.*) While this staff member spoke to a very small percentage of "Regulation E Settlement Class" members, out of an abundance of caution, Class Counsel directed a subsequent notice to be sent to all "Regulation E Settlement Class" members clarifying the process. (*Id.*) True and correct copies of the mailed and emailed Reminder Letters are attached as **Exhibit B** to the Simpluris declaration. (*Id.*) The cost of this additional notice will be paid by Class Counsel from its own funds, and will not in any way reduce the Settlement Fund for the Class. (*Id.*)

### E.  Service Award

Class Counsel also seeks the Court's approval of a $10,000 service award to the class representative, Lisa Carter. Ms. Carter's substantial and meaningful contribution to her case is more thoroughly described in her previously filed declaration. (Dkt. No. 34-2.) Moreover, the service award sought is well within the range of approval in the Tenth Circuit. *See, e.g., McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (finding that $15,000 incentive award to lead plaintiff was reasonable in light of her substantial involvement in the litigation).

### F.  Costs

Reasonable costs are compensable in a common fund case where "the particular costs are the type typically billed by attorneys to paying clients in the marketplace*."* *Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018). The expenses here were incurred to initiate the action, to allow experienced litigators to appear *pro hac vice*; to retain the services of a preeminent mediator; to retain a data expert to assist with mediation and settlement; and retain court reporters and videographers for depositions. (McCune Decl., ¶ 43). Expenses have amounted to $48,890.27. Previously, Class Counsel capped its total costs at $55,000. (Dkt. No. 34, SA, Ex. 1-2). Because these costs are small (compared to the Settlement amount) and reasonable, the Court should award the requested $55,000 to reimburse Class Counsel for costs. (*Id.*) To be clear, any amounts lower than $55,000 will remain in the Settlement Fund. (*Id.*) Simpluris has incurred $80,000 in administrative costs to date but has agreed to cap its costs at $107,000. (Simpluris Decl., ¶ 17.) The Court should

similarly award Simpluris its full costs, while excess funds will remain in the Settlement Fund.

### G. Attorney's Fees

The U.S. Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478.

When a common fund is created by settlement, courts in the Tenth Circuit apply a "hybrid approach," by combining the percentage fee method with specific factors, known as the *Johnson* factors, to determine reasonableness. *See Bruner v. Sprint United Mgmt. Co.*, No. CIV. A. 07-2164-KHV, 2009 WL 2058762, at *3 (D. Kan. July 14, 2009).

Here, Class Counsel apply the percentage method and request a fee award of one-third (33 and 1/3%) of the "Value of the Settlement." This request is consistent with the Settlement Agreement. (SA, ¶ 9(d)(i).) The Value of the Settlement is comprised of the Settlement Fund of $1,500,000.00, plus the practice changes as described herein, which are not quantifiable at this time, and thus are not included in the monetary totals. (*Id.,* ¶ 1(aa).) As such, the Value of the Settlement for fee assessment purposes is $1,500,000, meaning a one-third (33 and 1/3%) fee equals $500,000.[14] The requested attorneys' fees

---

[14] The Court should also consider that City National has changed or will change numerous practices because of this litigation. *See Poertner v. Gillette Co.*, 618 Fed.

are well within the Tenth Circuit's range of approval. *See Cimarron Pipeline Constr.,*
*Inc. v. National Council on Compensation Ins.*, 1993 WL 355466, at *2 (W.D. Okla. June
8, 1993) (fees in the range of 30-40% of any amount recovered are common in complex
and other cases taken on a contingent fee basis).

Courts in the Tenth Circuit generally hold that a lodestar cross check is not
required. *See Ramah Navajo Chapter v. Jewell*, 167 F.Supp.3d 1217, 1241 (D.N.M.
2016). Nevertheless, Class Counsel has submitted an aggregate total lodestar amount of
$290,238.50. (McCune Decl., ¶ 46).[15] Thus, the requested $500,000 fee represents a
lodestar multiplier of 1.72. *Id*. This multiplier is well within the range, and actually on the
low-end, of multipliers approved in the Tenth Circuit when a lodestar cross-check is
used. *See Cook v. Rockwell Int'l Corp.*, No. 90-CV-00181-JLK, 2017 WL 5076498, at *4
(D. Colo. Apr. 28, 2017) (finding multiplier of 2.41 reasonable and collecting cases that
typical multipliers range between 1 and 4).

Further, attorneys' fees of 30%-33 1/3% is the norm or market rate awarded in
similar overdraft cases nationwide. For example, in *In re TD Bank, N.A. Debit Card
Overdraft Litig.* (D.S.C. Jan. 9, 2020) Case No. 6:15-MN-02613-BHH, the Court
awarded Class Counsel a fee of $21 million based on a $70 million settlement value ($43
million of which was monetary compensation). The fee represented 30% of the $70

---

Appx. 624 (11th Cir. 2015); *see also Farrell v. Bank of Am. Corp., N.A.* (9th Cir. 2020)
872 F.Appx. 628, 631 (recognizing that injunctive and nonmonetary relief obtained in a
settlement "generated benefits" far "beyond the cash settlement value").

[15] McCune Law Group will compensate local counsel Barrett T. Bowers of The Bowers
Law Firm 10% of the total fees awarded to recognize his firm's significant contributions
to the favorable settlement achieved in this case. (McCune Decl., ¶ 47).

million total value of the settlement. In *Walker v. People's United Bank, N.A.*, Case No. 17-cv-304 (AVC), Dkt. No. 119 (D. Conn. June 29, 2020), the Court found the attorneys' fee request of $2,466,666 to be reasonable. In *Smith v. Bank of Hawaii*, Case No. 1:16-CV-00513 JMS-WRP, Dkt. No. 233 (D. Haw. Dec. 22, 2020), the Court found the requested attorneys' fees of $3,719,255 to be reasonable. And in *Barker v. Bayport Credit Union*, Case No. 20-cv-195, 2020 WL 13095246 (E.D. Va. Apr. 17, 2020), the Court found the requested attorney's fees of $1,056,066.05 to be reasonable).[16] The orders in these cases are attached to the McCune Declaration as **Exhibit 3**.

### 1. Attorney's Fees are Reasonable Based on the "Johnson" Factors

As mentioned *supra*, Courts in the Tenth Circuit combine the percentage fee approach against certain factors, known as the *Johnson* factors, to determine reasonableness. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). However, rarely are all the Johnson factors applicable. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993). Those factors that do apply here weigh in favor of the reasonableness of Class Counsel's fee request.

### a. The Time and Labor Expended

Class Counsel invested considerable time and resources into the investigation, research, and prosecution of this case on behalf of the Class. To date, both firms

---

[16] For a detailed overview of fee awards in other overdraft litigation, *see* Declaration of Professor Brian Fitzpatrick in Support of Plaintiffs' and Class Counsel's Request for Service Awards, Attorneys' Fees and Expenses, and Class Action Administrative Expenses ("Fitzpatrick Decl."), submitted in *In Re: TD Bank, N.A. Debit Card Overdraft Litig.*, No. 6:15-MN-02613-BHH, Dkt. No. 223 (D.S.C. Nov. 13, 2019), attached to the McCune Declaration as **Exhibit 2.**

comprising Class Counsel have expended 518.89 hours on this case. (McCune Decl., ¶¶ 25-38.) Class Counsel have also incurred $48,890.27 in costs. (*Id.*, ¶ 42.) Class Counsel were aggressive, efficient, and successful, securing a settlement for the Class valued at $1,500,000. This resulted in a favorable monetary recovery and practice changes for the Class. (*Id.*, ¶ 14.)

### b.  The Novelty and Difficulty of the Questions Raised

This case involves numerous complex factual and legal questions pertaining to banking contracts and federal banking law. Class Counsel assumed real risks in litigating this complex case and secured a favorable result under challenging circumstances. (McCune Decl., ¶ 20.) *See, e.g. Trombley v. Nat'l City Bank*, 826 F.Supp.2d 179, 205 (D.D.C. 2011) (noting that "class actions against banks involving their overdraft fee policies" are "complex cases").

### c.  The Skill Required to Perform the Legal Services Rendered

This Settlement was achieved by Class Counsel with decades of experience in prosecuting and trying class actions and complex litigation and have collectively recovered billions of dollars for class members in other complex class actions in other courts.  (McCune Decl., ¶¶ 2-9; *see also* Declaration of Barrett T. Bowers ("Bowers Decl.," ¶¶ 2-3.) The ability of Class Counsel to obtain a favorable result for the Class Members in spite of the complexity of the case and the numerous uncertainties in future litigation weighs in favor of granting the requested attorney's fees.

### d.  Preclusion of Other Employment

As set forth above, Class Counsel spent more than 500 hours over an almost three-year period on this case that could have been expended in other cases. (McCune Decl., ¶ 22; Bowers Decl., ¶ 7.)  Class Counsel took the case on a contingency fee basis, investing substantial time, effort, and money with no guarantee of any recovery. (*Id.*, ¶ 31.)

### e.  Customary Fee

In determining whether a requested rate is reasonable, the Court should consider the "prevailing market rate in the relevant community." *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir.1996). As such, a plaintiff must proffer evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Id.* Courts in this Circuit have routinely awarded around one-third or more the value of the settlement in common fund cases. *See Lucken Fam. Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) (finding that "the customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"). Moreover, Class Counsel have produced ample evidence concerning their requested fees. (McCune Decl., ¶¶ 40-41.)

### f.  Whether the Fee is Fixed or Contingent

Class Counsel confirms that Plaintiff is retained through a contingency fee agreement. (McCune Decl., ¶ 36; Bowers Decl., ¶ 5.) Courts routinely find that contingency arrangements are beneficial because they "insulate[]the class from the risk of incurring legal fees and shift[] that risk to counsel." *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015)**.**

15

### g.  The Amount in Controversy and the Results Obtained

Courts have found that the result obtained deserves greater weight than the

other *Johnson* factors. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992)  Where a plaintiff

has obtained excellent results, his attorney should recover a fully compensatory fee. *See*

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Class Counsel secured $1,500,000 in cash recovery, plus numerous practice

changes. (SA, ¶ 1(aa).) Class Counsel argues the total damages recoverable at trial would

have been $39,406,000. (McCune Decl., ¶ 22.) Without accounting for the agreed-upon

practice changes, this settlement constitutes 3.8% of the total and is within the range of

recovery considered reasonable in this Circuit. *See Voulgaris v. Array Biopharma Inc*.,

No. 17-CV-02789-KLM, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021) (collecting

cases and holding that settlement of 1.3% of total recoverable damages is reasonable

where recovery avoids "risky, costly, and protracted" litigation).

While Class Counsel would have sought full recovery for actual and statutory

damages at trial, it is possible that the Court could interpret Regulation E to not permit

recovery of actual damages for a certified class due to the individualized nature of having

to show detrimental reliance as did the courts in *Smith v. Bank of Hawaii*, No. CV 16-

00513 JMS-WRP, 2019 WL 2712262, at *8 (D. Haw. June 28, 2019) and *In re TD Bank,*

*N.A. Debit Card Overdraft Fee Litig*., 325 F.R.D. 136, 164 (D.S.C. 2018).  This means

the Class recovery would be limited to what is available per the monetary penalty

provided by the statute, which Class Counsel would argue is $2,500,000 ($500,000

multiplied by 5 violations). *See* 15 U.S.C. § 1693m(a); (McCune Decl., ¶ 23.) But the

16

Court could have found that the maximum penalty available for all Regulation E violations was capped at $500,000, decreasing the maximum recoverable damages to $2,894,225 ($2,394,225 (Repeat Fee Damages) plus $500,000 (Regulation E Damages)). (*Id.*) Using this calculation, Class Members are receiving 52% of the estimated value recoverable at trial, far exceeding what is reasonable in the Tenth Circuit. (*Id.*) This is an excellent result for the Class, and well within a reasonable range of recovery.

### h.  The Experience, Reputation, and Ability of Counsel

Class Counsel have extensive experience and demonstrated ability in successfully litigating complex class action and consumer cases. (McCune Decl., ¶¶ 2-8; Bowers Decl., ¶¶ 2-3.) As such, this factor weighs in favor of Class Counsel's request for attorney's fees. ‼

### i.  The Undesirability of the Case

Class action cases have often been recognized as "undesirable" due to the financial burden on counsel, and the time demands of litigating class actions of this size and complexity. *See Millsap v. McDonnell Douglas Corp.,* No. 94-CV-633-H(M), 2003 WL 21277124, at *12 (N.D.Okla. May 28, 2003) ("This case is . . . undesirable, in the way that all contingent fee cases are undesirable, because it produced no income, but has required significant expenditures . . . ."). Thus, this factor supports the reasonableness of the fee request.

### j.  Attorney's Fees Awards in Similar Cases

As mentioned in section (e), *supra*, one-third the value of the settlement fund is routinely awarded for attorney's fees in common fund cases in this Circuit. Moreover, as

set forth in detail *supra,* Class Counsel's requested fee amount is routine of similar overdraft cases throughout the country. (*See* McCune Decl., Ex. 2-3 (collecting cases)). As such, this factor supports the reasonableness of the fee award.

## IV.    ARGUMENT

### A.  The Settlement Meets the Standard for Final Approval Because it is Fair, Reasonable and Adequate

Class action settlements are subject to a two-step approval process. "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F.Supp.2d 95, 106–07 (D.Mass. 2010). Here, the Court has entered preliminary approval of the settlement. (Dkt. No. 36.)

In assessing whether a settlement is fair, reasonable and adequate for final approval, district courts in this Circuit consider four factors:  (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016). As demonstrated below, each of these factors supports final approval.

### 1.  The Settlement was Fairly and Honestly Negotiated

With this factor, the Court is ultimately concerned with the protection of class members whose rights may not have been given "adequate consideration during the

settlement negotiations." 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1979, 1 (2d ed.1986 & 2001 Supp.). The Court is also required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. Colo.,* 937 F.2d 505, 509 (10th Cir.1991).

Here, the settlement was reached after extensive and meaningful discovery, including Defendant's 30(b)(6) deposition, after Plaintiff's Expert had an opportunity to review and analyze transactional account data, and after a lengthy mediation session conducted with the assistance of an experienced mediator at arm's length without collusion. (McCune Decl., ¶¶ 13-14.)

Proposed Class Counsel in this case are experienced in litigating and settling consumer class actions and other complex matters. (*Id*., ¶¶ 2-8.)  They also have a particular expertise in overdraft fee class actions. (*Id*.)  They have investigated the factual and legal issues raised in this action and are in favor of the settlement.  (*Id*, ¶¶ 9-15.) Moreover, Named Plaintiff, Lisa Carter, attended the mediation session and was also in favor of the settlement. (*Id.*) As such, this factor weighs in favor of final approval.

## 2.  Serious Questions of Law and Fact Exist

Additionally, serious questions of law and fact exist, placing the ultimate outcome of this litigation in doubt. The existence of questions of law and fact "tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).

This case presents numerous complex factual and legal issues. Absent the Settlement, the Court would need to determine whether City National violated Regulation E. (McCune Decl., ¶20.) It would also need to decide whether City National breached its contracts with customers by assessing multiple NSF fees on a single item. (*Id*.) Motion practice would be risky for both sides. (*Id*.) And if the case went to trial, a favorable verdict for one party would lead to the other appealing, which could add years to the litigation, costing more time and expense with no guarantee of recovery. (*Id*.)

### 3. The Value of the Immediate Recovery Outweighs the Mere Possibility of Future Relief

This factor asks whether the Settlement Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, *supra,* at *13 (W.D. Okla. Oct. 27, 2008). The immediate recovery of $1,500,000.00 is a meaningful recovery eliminating the risk of uncertain future litigation. (McCune Decl., ¶ 20.) The Settlement is in cash, with no portion reverting to Defendant other than for repayment of debt. Though the practice changes City National has agreed to cannot be quantified, they bring additional value to Class Members and future customers. The value of the Settlement must also be considered against the alternative of continued litigation, including motion practice, a trial, and a lengthy appeals process that could span many years and involve great expense, with a relatively small chance of a better recovery. *See Gonzalez v. Elna Sefcovic, LLC*, 208 L.Ed.2d 425, 141 (2020) ("Because the outcome of this litigation was, at best, uncertain…the district court did not abuse its discretion in

determining that 'the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation.'").

### 4.  The Judgment of the Parties

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. Kansas Dept. of Rev.,* 209 F.Supp.2d 1179, 1183 (D. Kan. 2002). "[T]he Court should . . . defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 WL 24015151, at *11 (N.D. Okla. May 12, 2003). Class Counsel here are two law firms with significant experience in class actions and complex litigation; specifically, overdraft fee litigation. (McCune Decl., ¶¶ 2-8; Bowers Decl., ¶¶ 2-3.) Extensive investigation, discovery, data analysis, and mediation preceded the Settlement. (*Id*., ¶¶ 9-15.) Plaintiff and Counsel have weighed the value of the Settlement against the risks of future litigation.  (*Id*., ¶ 20.) Plaintiff and Counsel believe the Settlement is fair, adequate, and reasonable, and that it should be approved. (*Id*., ¶ 15.) City National also favors approval.

### B.  The Proposed Settlement Classes Should be Certified

The Court has preliminarily approved the Settlement Classes. (Dkt. No. 36.) For the reasons stated in the Court's Preliminary Approval Order, and as further stated below, the Court should certify the Classes for settlement purposes.

### 1.  The Numerosity Requirement is Satisfied

The first Rule 23 prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P.

23(a)(1). Here, there are 66,770 accounts that have been charged qualifying overdraft and/or NSF fees. (Simpluris Decl., ¶ 6.)  As such, numerosity is met.

## 2. The Requirement of Commonality is Satisfied

Certification also requires that "questions of law or fact common to the class" exist.  Fed. R. Civ. P. 23(a)(2).  Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Moreover, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500, at *3 (W.D.Okla. Mar. 20, 2009).

Numerous common questions of law and fact predominate over individualized issues. The theories underlying the Class claims involve uniform overdraft and NSF fee practices, as well as uniform contracts and disclosures, applicable to each Class Member. (Dkt. No. 1, ¶¶ 75-92.) Interpreting these contracts resolves the case's key issues. As such, commonality is satisfied.

## 3. The Requirement of Typicality is Satisfied

Rule 23 further requires that the class representative's claims be typical of the class members' claims.  Fed. R. Civ. P. 23(a)(3).  However, "'[e]very member of the class need not be in a situation identical to that of the named plaintiff" to meet the typicality requirement. *DG ex. Rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1198 (10th Cir. 2010). As long as the claims of the named plaintiff and class members "are

based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

Here, Plaintiff's claims are essentially identical to those of the Class. She was charged overdraft fees on one-time debit card and ATM transactions pursuant to the same Opt-in Agreement and process as other Class Members. She was also charged multiple NSF fees, or an NSF fee followed by an overdraft fee, for the same item, per the same agreements. (McCune Decl., ¶16.) As such, typicality is satisfied.

### 4.  The Requirement of Adequate Representation is Satisfied

The adequacy requirement asks if plaintiffs or counsel (a) "have any conflicts of interest with other class members and (b) will prosecute the action vigorously on behalf of the class." *In re Motor Fuel Temperature Sales Prac. Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013). Class Counsel Richard McCune and Emily Kirk of McCune Law Group, APC have represented classes for many years, with expertise in overdraft fee litigation. (McCune Decl., ¶¶ 2-8.) Class Counsel Barrett T. Bowers of The Bowers Law Firm has extensive experience in complex civil litigation. (Bowers Decl., ¶¶ 3-5.)

Plaintiff's interests align with the Class because she was charged overdraft fees on Regulation E transactions, and multiple NSF fees, or an NSF fee followed by an overdraft fee, for the same item. (Olsen Decl., ¶ 20.) She understands she is pursuing this case on behalf of all Class Members similarly situated and understands her duty to protect absent Class Members. (McCune Decl., ¶ 17; (Dkt. No. 34-2.). Further, she has actively participated in the litigation. (*Id.*)

### 5.   The Settlement Class Meets the Requirements of Rule 23(b)(3)

A settlement class must also comply with Rule 23(b). To certify a class, the plaintiff must show that (1) the common questions of law and fact predominate over questions affecting only individuals and (2) the class action mechanism is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### a.   Common Questions of Law and Fact Predominate

The predominance inquiry tests whether the proposed classes are sufficiently cohesive by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S.Ct. at 1045 (citation omitted); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Rule 23(b)(3) simply requires [] that the questions common to the class predominate over individualized questions."). Here, the governing agreements are common to all Class Members, making class treatment far more efficient. (Dkt. No. 1, ¶¶ 75-92.) The predominating issue is whether City National charges customers overdraft and NSF fees in violation of its contracts, and whether its overdraft practices violate Regulation E. (*Id.*) The trier of fact needs only interpret the uniform language of the relevant contracts and determine if City National's uniform practices violate Regulation E.

### b.  This Class Action is the Superior Method of Adjudication

Rule 23(b)(3) also requires that a court find "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It is enough that class treatment is superior because it will 'achieve economies

of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014). As the Supreme Court stressed in *Amchem*, 521 U.S. at 617:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

The desirability of concentrating the litigation in the present forum is illustrated by the fact that the amount of an individual overdraft or NSF fee in this case would be far less than the cost of even filing the complaint.  A large number of class members therefore have suffered damages in an amount that could not justify or sustain individual lawsuits, and the only real choice is thus between a class action and no action.  As Judge Posner once wrote, "only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004).  The overdraft and NSF fees at issue here were $25 each. As such, superiority is met.

## V.     CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court find that the Notice Program, as implemented, meets the requirements of due process and Rule 23, finally approve the Settlement, and certify the two Settlement Classes for settlement purposes.

Dated: November 6, 2023                    Respectfully submitted,

                                           */s/Emily J. Kirk*
                                           _
                                           Emily J. Kirk, *Pro Hac Vice*
                                           ejk@mccunewright.com
                                           **McCune Law Group**
                                           231 N. Main Street, Suite 20
                                           Edwardsville, IL 62025
                                           Telephone: (618) 307-6116
                                           Facsimile: (618) 307-6161

                                           Richard D. McCune, *Pro Hac Vice*
                                           rdm@mccunewright.com
                                           David C. Wright, *Pro Hac Vice*
                                           **McCune Law Group**
                                           3281 East Guasti Road, Suite 100
                                           Ontario, California 91761
                                           Telephone: (909) 557-1250
                                           Facsimile: (909) 557-1275

                                           Barrett T. Bowers, OBA No. 30493
                                           barrett@bowerslawok.com
                                           **The Bowers Law Firm**
                                           P.O. Box 891628
                                           Oklahoma City, Oklahoma 73189
                                           Telephone: (405) 727-7188
                                           Attorneys for Plaintiff Lisa Carter
                                           and the Putative Class